# In the United States Court of Federal Claims

No. 11-406C
(Filed: March 20, 2012)
(Not for Publication)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                                *
AUTO CLUB INSURANCE                             *
ASSOCIATION,                                    *
                                                *
                        Plaintiff,              *
                                                *
        v.                                      *
                                                *
                                                *
THE UNITED STATES,                              *
                                                *
                        Defendant.              *
                                                *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

___

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
___

**WILLIAMS,** Judge.

Plaintiff, Auto Club Insurance Association, a Michigan no-fault automobile insurance carrier, filed this suit on June 21, 2011, seeking reimbursement from the federal government for medical expenses paid on behalf of one of its policy holders injured in a September, 1977 vehicle accident. While the insured has been covered by Medicare since at least 2005, the medical expenses have been paid by Plaintiff as required by Michigan's no-fault automobile insurance statute. Plaintiff claims that Medicare is required to reimburse it for those expenses.

Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), arguing that the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2) (2006) ("MSPA"), is not a money-mandating statute, and that Plaintiff has failed to demonstrate the elements of an implied contract or illegal exaction. For the reasons set forth below, Defendant's Motion to Dismiss is granted.

## Background

F.H., the insured whose medical expenses underlay Plaintiff's claim, was injured in an accident in Michigan in 1977 and was insured by the Plaintiff. Compl. ¶¶ 5-8. Plaintiff has paid

1

$315,413.64 in medical expenses on F.H.'s behalf since 2005.  Compl. ¶ 16.  According to Plaintiff,

> Under Michigan law, when an insured's medical expenses are submitted to a no-fault automobile insurance carrier, that carrier must pay those expenses, even if properly payable, in whole or in part, by other coverage or resources.  If there are issues relating to coverage or priority, the no-fault insurer's obligation is to pay the item, and then seek repayment or reimbursement from other coverage or resource.

Compl. ¶ 9.

Plaintiff argues that under the MSPA and the implementing regulations of a federal agency, the Centers for Medicare & Medicaid Services ("CMS"), Medicare is the primary insurer for medical expenses stemming from accidents that occurred prior to December 5, 1980.  Compl. ¶¶ 10-14.  As such, Plaintiff claims that there is a "right of reimbursement flowing from the United States to the no-fault insurer" when that insurer acted as the primary insurer for accidents that occurred within that time frame.  Pl.'s Am. Br. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp.") 5-6.

Plaintiff argues that because Medicare is the primary insurer for F.H.'s accident-related medical expenses, the Government should reimburse Plaintiff for all such expenses since 2005, plus interest, costs, and fees.  Compl. ¶¶ 16-17.[1]  Plaintiff also asserts that the MSPA and its implementing regulations constitute an implied contract between the CMS and no-fault insurers, and that this implied contract requires CMS to reimburse those insurers.  Compl. ¶ 15.

## Discussion

When deciding a motion to dismiss under RCFC 12(b)(1), the Court assumes all factual allegations to be true and construes "all reasonable inferences in plaintiff's favor."  Hall v. United States, 74 Fed. Cl. 391, 393 (2006) (quoting Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)).  Plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence before the Court proceeds to the merits of the action.  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); see also Naskar v. United States, 82 Fed. Cl. 319, 320 (2008); Fullard v. United States, 78 Fed. Cl. 294, 299 (2007); BearingPoint, Inc. v. United States, 77 Fed. Cl. 189, 193 (2007).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  RCFC 12(h)(3); see also Tindle v. United States, 56 Fed. Cl. 337, 341 (2003).

The ability of the Court of Federal Claims to entertain suits against the United States is limited.  "The United States, as sovereign, is immune from suit save as it consents to be sued."  United States v. Sherwood, 312 U.S. 584, 586 (1941).  A waiver of immunity "cannot be implied

---

[1] Plaintiff's counsel has filed two similar complaints in this Court, both of which have been dismissed for lack of subject-matter jurisdiction.  See  Auto Club Ins. Ass'n v. United States, No. 11-256C, 2012 WL 184150, at * 7 (Fed. Cl. Jan. 24, 2012); Citizens Ins. Co. of Am. v. United States, No. 11-257C, 2011 WL 6934813, at *10 (Fed. Cl. Dec. 29, 2011).

but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). Unless Congress consents to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States . . . ." Sherwood, 312 U.S. at 587-88.

The Tucker Act grants this Court jurisdiction to hear claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). The Tucker Act is only a jurisdictional statute. United States v. Testan, 424 U.S. 392, 398 (1976). It does not create a stand-alone cause of action, meaning "a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (partial en banc). The separate source of substantive law must be a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

Plaintiff alleges that the Tucker Act is the basis for its claim, and "[i]f there is no relief provided to the plaintiff under the Tucker Act for this claim, there is no relief." Pl.'s Resp. 14. However, Plaintiff has not established jurisdiction under the Tucker Act because it has not shown that a money-mandating statute or regulation applies and has not established the elements of an implied contract.

The Court cannot find any money-mandating language in the MPSA or related regulations. Plaintiff concedes that the MSPA "does not make an express provision for reimbursement from CMS to an insurer which has paid a medical item." Pl.'s Resp. 3. However, Plaintiff, ignoring decades of precedent, argues it is not necessary to have such an express provision to invoke this Court's jurisdiction. Pl.'s Resp. 12-13. It is well settled that the Tucker Act "does not create any substantive right enforceable against the United States for money damages." Testan, 424 U.S. at 400. This Court lacks jurisdiction to entertain this claim under the MSPA because Plaintiff has failed to show that the MSPA is a money-mandating statute or involves money-mandating regulations. See Auto Club Ins. Ass'n, No. 11-256C, 2012 WL 184150, at * 4; Citizens Ins. Co. of Am., No. 11-257C, 2011 WL 6934813, at *6.

Plaintiff also alleges that this Court has jurisdiction due to an alleged implied contract between Plaintiff and CMS. Compl. ¶ 15. Plaintiff has failed to articulate the specific terms of this alleged implied contract. Rather, Plaintiff claims that the MSPA established a set of mutual obligations between Medicare and payers subject to the MSPA, and it is "the relationship between the parties, the circumstances of their interactions, which form the basis of the contract implied in fact." Pl.'s Resp. 16-17.

An implied-in-fact contract is "an agreement . . . founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." Balt. & Ohio R.R. Co. v. United States, 261 U.S. 592, 597 (1923). A plaintiff must allege all the requisite elements of an express contract with the United States, including offer, acceptance,

3

consideration, and authority.  See Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1434 (Fed. Cir. 1998); Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 731 (2010).

Contrary to Plaintiff's assertions, the MSPA "statutory-regulatory complex" does not give rise to a contractual relationship.  See Pl.'s Resp. 21; Auto Club Ins. Ass'n, No. 11-256C, 2012 WL 184150, at * 5;  Citizens Ins. Co. of Am., No. 11-257C, 2011 WL 6934813, at *9.  When asked at oral argument, Plaintiff's counsel could not articulate any basis for the implied contract other than his assertion that the regulatory system provides for priority of payment between the parties depending on the accident date.  Tr. 6, Jan. 30, 2012.  Plaintiff has not identified any specific offer, acceptance, or consideration and has therefore not met its burden in establishing an implied-in-fact contract.

Plaintiff also alleges its claim for reimbursement is a claim for "liquidated or unliquidated damages in cases not sounding in tort" and thus within this Court's jurisdiction under the Tucker Act.  Pl.'s Resp. 17-18.  While Plaintiff resists characterizing its claim as an illegal exaction, that is essentially what it alleges.  Plaintiff contends that when a governmental agency "has the citizen's money in its pocket," a plaintiff may bring a claim in this Court for "damages not based on tort."  Pl.'s Resp. 20 (citing two illegal exaction cases, Clapp v. United States, 127 Ct. Cl. 505 (1954) and Pan Amn. World Airways v. United States, 129 Ct. Cl. 53 (1954)).  Plaintiff contends that because "it has advanced payment for medical expenses when those medical expenses were the primary responsibility of CMS under the Medicare program, the net result is similar -- CMS in effect has the insurer's money in its pocket."  Pl.'s Resp. 20 (emphasis in original).

Plaintiff's argument is misplaced.  "An illegal exaction . . . exists only if money had been 'improperly exacted or retained' by the government."  Lawrence v. United States, 69 Fed. Cl. 550, 557 (2006) (quoting Bank One, Mich. v. United States, 62 Fed. Cl. 474, 480 (2004) (alterations in original)); see also Clapp v. United States, 127 Ct. Cl. at 512 (an illegal exaction occurs when "the Government has the citizen's money in its pocket").  In order to maintain a claim for illegal exaction, Plaintiff must allege it "paid money over to the Government, directly or in effect, and seeks return of all or part of that sum that was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation."  Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (internal quotations omitted).

Thus, while this Court may entertain a properly pleaded illegal exaction claim, Plaintiff has failed to state such a claim here.  Unlike the plaintiffs in Pan American and Clapp, Plaintiff in this case has not paid monies to government agencies based on any agencies' faulty claims of statutory authority.  Instead, Plaintiff has merely paid for medical expenses that it was required to pay for under the terms of its insurance policies and Michigan's no-fault auto insurance statute.  No funds of Plaintiff have been paid to the federal government by force of any federal statute or regulation.  Therefore, Plaintiff has not made out a proper claim for illegal exaction under the Tucker Act.

Finally, Plaintiff states that because CMS has not established any administrative process for the submission of reimbursement claims of this nature, the Court of Federal Claims is the only forum where the claim may be made. Compl. ¶ 4; Pl.'s Resp. 4. Plaintiff notes that while this Court has declined to exercise jurisdiction over some types of Medicare reimbursement claims, those cases are distinguishable because Congress "provided a specific and comprehensive scheme for administrative and judicial review of Medicare reimbursement claims of the kind asserted." Pl.'s Resp. 14 (quoting Wilson ex rel Estate of Wilson v. Unites States, 405 F.3d 1002, 1009 (Fed. Cir. 2005)). Plaintiff ignores the simple fact that this Court cannot create its own jurisdiction, even if no administrative process exists for the resolution of Plaintiff's claims. Unless Congress consents to a cause of action against the United States, "there is no jurisdiction in Court of Claims more than in any other court to entertain suits against the United States . . . ." Sherwood, 312 U.S. at 587-88.

Under fundamental principles of separation of powers, this Court cannot construct means of redress absent Congressional authorization. The Federal Circuit's decision in Palmer v. United States, 168 F.3d 1310 (Fed. Cir. 1999) is instructive on this point. In finding that Congress had not created jurisdiction for the back pay claims of wrongfully terminated military reserve officers, the court stated:

> If Col. Palmer and his fellow Reservists believe that this result is unfair, and from the viewpoint of access to the courts it may well be, the remedy is to petition Congress to change the nature of the pay mandate, or to provide a separate basis for relief in the Court of Federal Claims, independent of a money-mandated claim.

Id. at 1314-15. The same is true in this case. While Plaintiff may petition Congress to change the nature of the MSPA reimbursement system, this Court cannot fashion jurisdiction where it has not been granted.

## Conclusion

Defendant's motion to dismiss is **GRANTED**. The Clerk of Court is directed to dismiss this action for lack of jurisdiction.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**JUDGE**